## BOARDMAN v. BLIZZARD et al.

*(Circuit Court, S. D. Iowa, C. D.    August 30, 1888.)*

PAYMENT—WHAT AMOUNTS TO—MONEY IN HANDS OF AGENT.
    Defendant applied to C. to procure him a loan to be used in paying a mortgage held by plaintiff.  The loan was secured and embezzled by C., but defendant did not know when he received the money, and never expressly directed him to apply it to the mortgage.  C. was plaintiff's agent to collect the interest and principal of the mortgage.  *Held*, that defendant had made no application of the money, and that its receipt by C. was not a payment of the mortgage.

In Equity.    Bill to foreclose mortgage on realty.    On final hearing.

This is a bill to foreclose a mortgage on real estate, brought by William Boardman against Harrison Blizzard, owner of the real estate, and Warren Gifford, a junior incumbrancer.

*Kauffman & Guernsey*, for complainant.

*H. McNeil* and *D. H Ettien*, for defendants.

SHIRAS, J.    On the 25th day of July, 1879, the defendant Harrison Blizzard, through Hugh R. Creighton, of Des Moines, Iowa, negotiated a

loan of $700 from the complainant, payable November 1, 1884, securing the same by a mortgage on certain realty situated in Warren county, Iowa. The present bill was brought for the purpose of foreclosing this mortgage, it being averred that the principal debt is due and unpaid. The defendant Blizzard avers payment, and shows that for the purpose of raising the money that would be needed for the payment of said mortgage he, on or about the 26th day of August, 1884, made an application through the Union Loan Association of Des Moines, Iowa, under which name Hugh R. Creighton mainly carried on business, for a loan of $700, to be secured by a mortgage upon the realty described in the mortgage to the complainant; that through Sanford & Kelley, loan brokers at New Bedford, Mass., the desired loan was placed with Warren Gifford, who advanced the needed sum, and which was on or about September 26, 1884, forwarded by said Sanford & Kelley to Hugh R. Creighton, at Des Moines, Iowa. A mortgage to secure the amount thus loaned was delivered to said Gifford, he accepting same in the belief that his mortgage would be the first lien on the land, through the payment of the mortgage to complainant. Instead of applying the money thus received to the purpose for which it was borrowed, to-wit, the payment of the debt due complainant, Creighton embezzled the same, and the real question to be determined is upon whom the loss must fall.

The rascality of Creighton has created such a state of facts that it is impossible to avoid a serious loss to one of two really innocent parties, to neither of whom can the slightest bad faith, or even ordinary negligence, be attributed. No matter, therefore, how the cause may be decided, the party adjudged to bear the loss will doubtless feel aggrieved; for no amount of logical reasoning will overcome the natural feeling that it is an outrage that one should be compelled to submit to heavy pecuniary loss when the party is not conscious of any failure of duty or of care on his part. It is not questioned that the complainant loaned the sum for which the defendant Blizzard executed the mortgage in the bill of complaint described, and that the latter received the same. Unless, therefore, this sum has been repaid, the complainant has a just claim to recover the amount thereof. The case, therefore, turns upon the plea of payment interposed by the defendant. It is admitted in the stipulation of facts signed by the parties hereto that the money procured from Gifford never reached the complainant, nor was the same used by Creighton in the interest of or for the benefit of complainant, but the same was converted by Creighton to his own use. To make the complainant responsible therefor it must be made to appear that when Creighton converted the money he was holding the same as agent for complainant. There is evidence in the case tending to show that Creighton collected the annual interest accruing on this loan, and on others held by complainant; and it may be assumed that the evidence would justify the finding that Creighton acted for the complainant in the collection of the principal and interest of the loans that had been negotiated through Creighton. It is equally, or even more, certain, that Creighton had also acted as agent for the defendant Blizzard. The money actually embez-

zled by Creighton was that procured from Gifford, and which came into the hands of Creighton in September, 1884. The procuring of this loan was the act of the defendant Blizzard, with which the complainant was not in any sense connected. It does not appear that Blizzard was moved in procuring the same by any act, demand, or notice from either complainant or Creighton. The debt to complainant did not mature until November 1, 1884, and the initiatory steps in the procurement of the loan from Gifford were taken in August previous, and the money was actually received by Creighton in September. When the money came into his hands he received it in his capacity of agent for Blizzard. There is nothing in the evidence to show that Blizzard expected to pay off the loan to complainant before its maturity. All that can be inferred from the evidence is that he had taken the steps resulting in the procurement of the second loan for the purpose of being prepared to meet the debt due to complainant when the same came due. The money in the hands of Creighton remained the money of Blizzard, unless it was appropriated to the payment of the debt of complainant, and there is nothing shown in the evidence upon which such appropriation can be predicated. The testimony of the defendant Blizzard was taken in the case, but he was not interrogated in regard to the second loan, and does not refer to it, nor to the use to be made of the money so obtained. In the written stipulation of facts submitted it is stated "that on or about the 26th day of August, 1884, the defendants Harrison Blizzard and Martha E. Blizzard, for the purpose of raising money to pay off and satisfy the mortgage attempted to be foreclosed in this action, made an application for a loan of money through the Union Loan Association of Des Moines, Iowa, for the purpose of borrowing the sum of $700," etc. There is nothing in the evidence to show that Blizzard directed or expected Creighton to hold the money after its reception, and it is not shown that he ever directed him to apply it to the payment of the debt due complainant. The statement is that Blizzard, for the purpose of procuring the money to pay the debt due complainant, applied for a new loan; but it is not shown that he ever directly authorized Creighton to make the application to the payment of complainant's debt. It further appears that Blizzard did not know until after April, 1885, that the money had been procured on the second bond and mortgage executed. Two letters written Blizzard by Creighton—one in December, 1884, and one April 25, 1885—are in evidence, in which Creighton wrote him that, owing to the scarcity of money, he had been unable to negotiate the second loan, but that he hoped to be able to do so by May 1st. It does not, therefore, appear, as already said, that Blizzard had expressly directed Creighton to apply the money when received upon the second loan to the payment of the loan due complainant, and he was not induced to believe that such appropriation had in fact been made, because he was led to believe that the money had not been received by Creighton. In the stipulation of facts it is agreed that Creighton never used the proceeds of the second loan for the purpose of paying off and satisfying the mortgage debt due complainant, but converted the money to his own use; and it is not

shown but what this conversion took place before the maturity of the debt due complainant. The strong probabilities are that Creighton embezzled the money as soon as it came into his possession. Under such circumstances, upon what ground can it be fairly claimed that, when the embezzlement took place, the money had become that of complainant? In.the absence of evidence showing that the money received from Gifford had been appropriated in Creighton's hands to the payment of complainant's claim, it must be held that the plea of payment has not been made out, and that complainant is entitled to a decree against the defendant Blizzard for the sum due, and for the foreclosure of the mortgage.

Warren Gifford, the holder of the second mortgage, is also made a party defendant to the bill, and answers the same, setting up the execution of the mortgage to himself as security for the money by him advanced, and averring the delivery of the money to Creighton as a payment of the mortgage to complainant. There is nothing in the evidence which places Gifford in any other position than that occupied by Blizzard. It is not claimed that complainant has by act or word estopped himself from showing the exact facts of the case, and the defense relied on by Gifford is the same as that pleaded by Blizzard, to-wit, payment of the debt due complainant. The evidence failing to support this defense, the complainant is entitled to a decree of foreclosure, as prayed for, against all the defendants.